# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs December 6, 2005

## STATE OF TENNESSEE v. WAYNE MILLER

**Appeal from the Criminal Court for Shelby County**
**No. 02-04238    W. Otis Higgs, Jr., Judge**

---

**No. W2005-00678-CCA-R3-CD  - Filed December 16, 2005**

---

The Defendant was convicted of possession of a controlled substance with the intent to sell, possession of a controlled substance with the intent to deliver, and evading arrest while operating a motor vehicle.  On appeal the Defendant contends that the evidence is insufficient to sustain his convictions.  Finding that there exists no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Paul K. Guibao (on appeal) and Brett Stein (at trial), Memphis, Tennessee, for the Appellant, Wayne Miller.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; Michael McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

The Defendant was indicted on charges that, on January 16, 2002, he possessed a controlled substance with the intent to sell and to deliver it and that he evaded arrest while operating a motor vehicle.  At the Defendant's trial for these charges, Michael McCord, an officer with the Memphis Police Department in the narcotics division, testified that, on January 16, 2002, he was patrolling in north Memphis with a trainee named Jerry Layden.  He said that, while patrolling, he noticed a Camero that disregarded a red-light, and he began to follow that vehicle and activated his blue lights to stop the car.  Once the officer initiated the stop, he exited his patrol car and approached the driver's side of the Camero.  He said that, as he approached the

1

driver's side, the driver put the car into gear and "took off." Officer McCord said that, before the car sped away, he was able to get a good look at he driver. He saw that the driver had a full set of gold teeth and was wearing a multi-colored shirt that had vertical stripes.

The officer said that, after the Camero sped away, he ran back to his patrol car and chased the Camero. During this chase, the Camero's driver disregarded another red-light and ran several stop signs. Officer McCord said that he never got close enough to the Camero to determine its speed. He said that he lost sight of the Camero for approximately thirty seconds, until a man who was cutting grass in the neighborhood told the officer where the Camero had gone. Following the man's directions, Officer McCord found the Camero in a driveway with both doors open. Officer McCord said that he saw marijuana in the passenger seat floor board of the car, and then he heard someone running through the bushes nearby. He said that he and Layden pursued the driver of the Camaro on foot, and the passenger of the Camaro, Demetrias Grimes, was taken into custody shortly thereafter. The officer said that he was going back to his patrol car when he noticed a man, who he identified as the Defendant, standing underneath the carport next door to where the Camaro had been abandoned and working on the engine of a pick-up truck.

The officer approached the Defendant and asked him if he had seen which way the two men that ran from the Camaro had gone, and the Defendant said that he had not seen anyone. The officer noted that the Defendant was "extremely nervous" when he questioned him. He asked the Defendant how long he had been in the carport, and the Defendant said that he had been working on the pick-up truck. Officer McCord said that, when he looked at the Defendant, he realized that he looked "just like" the driver of the Camaro. He noticed that the striped shirt that the Camaro's driver was wearing was lying in the carport next to the pick-up truck. He asked the Defendant to "smile" and, when he smiled, he noticed that the Defendant had a full set of gold teeth, the same as the Camaro's driver. The officer said that he then asked whose car the Defendant was working on, and the Defendant was unable to respond. The Defendant also did not know who lived at the house where he was working on the car. Officer McCord said that he then placed the Defendant in custody.

Officer McCord testified that, when he first arrested the Defendant, the Defendant told him that he did not have any identification and gave him a false name and birth date. The Defendant eventually gave the officer his real name. The officer said that he searched the Defendant and did not find any contraband on the Defendant's person, but he did find cash valued between $400 and $500. The officer said that the Defendant was not able to produce keys to the pick-up truck on which he was working, and the officer did not find any keys on the Defendant's person. The officer said that he placed Grimes, the passenger of the Camaro, in the backseat of the patrol car with the Defendant. The officer called a tow truck for the Camaro and took the two suspects to the jail. When transporting them to the jail, the Defendant said that the only reason that he ran was because he did not have a valid driver's license and he knew that Grimes was in possession of marijuana. Officer McCord testified that a search of the Camaro revealed a 95.9 gram bag of marijuana.

The officer said that, after the Defendant was arrested, the officer went back to the house where the Defendant was found working on the pick-up truck to ask the residents of that house if they had employed the Defendant. The residents denied employing the Defendant, and they were upset that the Defendant had taken apart the truck's engine.

On cross-examination, the officer testified that this incident occurred during the day, and he followed the Camaro for approximately two miles before it stopped. Officer McCord said that, when he first approached the Camaro, he could only see the back of the driver's head, but then the driver turned to look at him, and he saw the driver's face clearly. He said that he saw the driver for a second or two, and the driver's most distinguishing factor was his gold teeth. The officer admitted that there was nothing in the arrest report about the driver's gold teeth or his multi-colored shirt. He also said that he did not take the shirt into evidence but gave it back to the Defendant. Officer McCord said that the marijuana was found on Grimes when Grimes was taken into custody. The marijuana that was on the passenger's side floor board was actually marijuana residue. Officer McCord testified that, when he first saw the Defendant standing in the carport, the Defendant was approximately forty feet from the Camaro. He said that the Defendant did not try to run when the officer first approached him in the carport.

On redirect examination, the officer said that he positively identified the Defendant because he recognized his shirt, his gold teeth, and his facial features.

Jerry Layden, an officer with the Memphis Police Department, testified that in January of 2002 he had just graduated from the police academy. He said that, on January 16, 2002, he was training with Officer McCord at around 2:00 p.m. when he observed a Camaro running a red light. He said that Officer McCord, who was driving the patrol car that they were in, tried to stop the Camaro. Officer Layden testified that, when the Camaro stopped, Officer McCord got out of the patrol car and approached the driver's side of the Camaro, and the Camaro then "just took off." He said that Officer McCord got back into the car and they pursued the Camaro for about five or six minutes until they lost sight of the Camaro for about one minute. They found the Camaro parked behind a house, where the driver and passenger had apparently left the car with its doors open. Officer Layden said that Officer McCord called in other officers to the area, and those officers caught the passenger of the Camaro running in the area. Officer Layden said that Officer McCord then noticed a man working on a car in the house next door, and he went to question this man, who he later determined was the driver of the car.

On cross-examination, Officer Layden testified that he never saw the driver of the car. The officer also said that he did not confiscate the marijuana himself, but another officer confiscated it from Grimes. He said that the bag was not tested for fingerprints.

Tara Barker, a special agent with the Tennessee Bureau of Investigation ("TBI") crime laboratory, testified that she weighed and tested the substance that was in the bag found on the passenger seat floorboard of the Camaro, and she determined that it was 87.5 grams of marijuana.

Based upon this evidence, the jury found the Defendant guilty of possession of a controlled substance with the intent to sell, possession of a controlled substance with the intent to deliver, and of evading arrest while operating a motor vehicle. The trial court merged the possession with intent to sell conviction with the possession with intent to deliver conviction, and sentenced the Defendant, as a Persistent Offender, to four years in the workhouse. For the evading arrest conviction, the trial court sentenced the Defendant, again as a Persistent Offender, to four years in the workhouse. The trial court ordered that the Defendant's sentences run concurrently.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain any of his convictions. The State counters, first, that this issue is waived because the Defendant absconded prior to the hearing on his motion for new trial. Further, the State asserts that, even if not waived, the evidence was sufficient to prove both the elements of the crime and the Defendant's identity.

## A. Waiver

The first issue that we must address is whether the Defendant, by absconding, waived our review of the issue of whether the evidence is sufficient to sustain his convictions. A defendant's motion for new trial is not a prosecution by the State, but a proceeding brought by the defendant to set aside a jury verdict after trial. Bradford v. State, 202 S.W.2d 647, 648 (Tenn. 1947). When, prior to the determination of such motion, a defendant flees custody, he "by his own act has waived the right to have his motion for new trial considered and determined," and this has the effect of "an abandonment of the prosecution of his motion." Id. at 649. Accordingly, the Defendant in this case has waived all issues presented in his motion for new trial except sufficiency of the evidence and sentencing. State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). Therefore, we conclude that the Defendant has not waived his right to appeal the issue of the sufficiency of the evidence, and we turn to address that issue on its merits.

## B. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the

witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

### 1. Possession With Intent to Deliver Conviction

In order to convict the Defendant of possession with intent to sell or deliver a controlled substance, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed "a controlled substance with intent to manufacture, deliver, or sell such controlled substance." Tenn. Code Ann. 39-17-417(a)(4) (2003). Possession may be actual or constructive. A person who knowingly has direct physical control over an object at a given time is then in actual possession of it. See 7 Tenn. Practice, Tenn. Pattern Jury Inst.-Criminal 31.04 (2002). Tennessee Code Annotated section 39-17-417(a), prohibiting the possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. Id. "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" Id. at 846 (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (citations omitted)).

According to Tennessee Code Annotated Section 39-17-419 (2003), "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Thus, the jury can infer an intent to sell or dispense drugs based upon the amount of drugs possessed by the defendant and the absence of drug paraphernalia. See State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (sustaining a conviction for possession with intent to sell after the defendant had been discovered with 1.7 grams of crack cocaine on his person); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony about the amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute); State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *3 (Tenn. Crim. App., at Nashville, Oct. 8, 2004), *perm. app. denied* (Tenn. May 23, 2005) (determining that the absence of drug paraphernalia, and testimony of value and amount of 3.3 grams of cocaine provided sufficient evidence for jury to draw an inference of defendant's intent to sell and deliver a controlled substance); State v. William F. Cartwright, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, at *4 (Tenn. Crim. App., at Nashville, May 10, 2004)*, no Tenn R. App. P. 11 application filed* (holding that the testimony about the large volume and street value of 25.5 grams of cocaine, the typical dosages for addicts, and the absence of drug paraphernalia was sufficient to support an inference and conviction of intent to deliver).

5

We acknowledge, of course, that the identity of the perpetrator is an essential element of any crime, see State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975), and therefore must be proven by the State beyond a reasonable doubt. Issues of identity and credibility are classic jury questions. State v. Gregory Mullins, No. E2004-02314-CCA-R3-CD, 2005 WL 2045151, at *5 (Tenn. Crim. App., at Knoxville, Aug. 25, 2005), *no Tenn. R. App. P. 11 application filed*.

Initially, we note that the Defendant seemingly does not argue that the evidence was insufficient to prove the elements of possession with intent to deliver, but he argues that the State did not prove his identity. We conclude that the evidence presented at trial, viewed in the light most favorable to the State, is sufficient to sustain the Defendant's conviction for possession of a controlled substance with the intent to deliver. The evidence establishes that the Defendant was driving in a car with Grimes, who he knew had a "bag of weed." Constructive possession requires that the Defendant have the ability to exercise dominion and control over the drug, either directly or through others. We conclude that the Defendant had the ability to reduce the marijuana in his car to actual possession. Further, the amount of marijuana, over 85 grams, the absence of drug paraphernalia, the cash valued between $400 and $500 on the Defendant's person, and the fact that the Defendant evaded police, could all be reasonably considered by a jury as relevant facts justifying the conclusion that the Defendant had the intent to deliver this marijuana.

Finally, the evidence is sufficient to establish the Defendant's identity. Officer McCord said that he recognized the Defendant, who he saw in the carport, as the man who was the driver of the Camaro. Further, the evidence established that Officer McCord approached the driver's side door of the Defendant's Camaro, and the Defendant turned to look at him. The officer noted the Defendant's shirt, saw his face, and saw his gold teeth. The officer then saw the Defendant standing in a carport next to where the abandoned Camaro was located working on a pickup truck. Officer McCord approached the Defendant and began asking him questions. He recognized a shirt on the ground as the same one he had seen earlier on the Camaro's driver. He then saw the Defendant's gold teeth, and he recognized the Defendant as the driver of the Camaro. Further, after more investigation, the officer learned that the Defendant did not live at the address where the pickup truck was located, that the residents did not hire the Defendant to work on their truck, and that the residents were upset that the Defendant had taken their truck apart.

The Defendant did not testify, but he argued that the officer was mistaken and he highlighted that the lack of fingerprint evidence or a signed confession indicated that he was not the perpetrator of this crime. What the Defendant in this case asks us to do is to reevaluate the credibility of the testimony, but questions concerning the credibility of the witnesses are resolved by the trier of fact. Evans, 108 S.W.3d at 236. This evidence is sufficient to support the jury's finding that the Defendant was the perpetrator of this crime. Accordingly, the Defendant is not entitled to relief on this issue.

## 2. Evading Arrest While Operating a Motor Vehicle Conviction

The Defendant again contends that the evidence is insufficient to prove his identity as the driver of the Camaro that fled the stop by Officers McCord and Layden. As previously stated, the identity of the perpetrator is an essential element of any crime, see Thompson, 519 S.W.2d at 793, and therefore must be proven by the State beyond a reasonable doubt. Issues of identity and credibility are classic jury questions. Gregory Mullins, 2005 WL 2045151, at *5. Again, what the Defendant in this case asks us to do is to reevaluate the credibility of the testimony, but questions concerning the credibility of the witnesses are resolved by the trier of fact. Evans, 108 S.W.3d at 236. As previously articulated, the evidence presented at trial is sufficient to support the jury's finding that the Defendant was the driver of the Camaro, and thus was the person who evaded arrest while operating a motor vehicle.

## III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE